UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ordos City Hawtai Autobody Company, Ltd.
and Inner Mongolia OED Engine Company,
Ltd.,

    Plaintiffs,

v.                                                 Case No. 13-14909
                                                 Honorable Sean F. Cox

Dimond Rigging Company, LLC d/b/a
Absolute Rigging & Millwrights,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

This case involves, among many other things, contract disputes. Plaintiffs Ordos City Hawtai Autobody, Ltd. ("Ordos") and Inner Mongolia OED Engine Company, Ltd. ("Inner Mongolia") (collectively, "Plaintiffs"), allege that Defendant Dimond Rigging Company, LLC, d/b/a Absolute Rigging & Millwrights ("ARM") breached contracts concerning Defendant's care for, and transportation of, automotive manufacturing equipment that Plaintiffs purchased from companies located in the United States.

This matter is before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion has been fully briefed by the parties. The Court heard oral argument on Defendant's motion on April 2, 2014. For the reasons set forth below, the Court shall DENY Defendant's Motion to Dismiss.

**FACTUAL BACKGROUND**

Plaintiffs Ordos City Hawtai Autobody Company Co., Ltd. ("Ordos") and Inner Mongolia

OED Engine Company, Ltd. ("Inner Mongolia") are wholly-owned subsidiaries of Hawtai Motor Group ("Hawtai"). (Verified Compl. at ¶ 3). Hawtai, Ordos and Inner Mongolia are organized under the laws of China, and their principal places of business are in China. (Verified Compl. at ¶¶ 1-3). Defendant Dimond Rigging Company, LLC, d/b/a Absolute Rigging & Millwrights ("ARM") is a Michigan limited liability company located in Birmingham, Michigan. (Verified Compl. at ¶ 4).

**1)      The "Line 7 Equipment"**

In 2011, Ordos purchased two pieces of very large automobile manufacturing equipment referred to by the parties as "the Line 7 Equipment." (Verified Compl. at ¶ 8). Ordos entered into a Rigging Agreement with Defendant ARM, whereby Ordos was obligated to pay ARM over $1 million, and in exchange ARM would "provide for the rigging, dismantling, washing, packing, and loading of all of the Line 7 Equipment." (Verified Compl. at ¶ 9; *see* Line 7 Rigging Agreement, attached to Compl. at Ex. 1). The Line 7 Rigging Agreement contains a clause that states:

> **Disputes Settlement.** The disputes between the two parties will be solved by amicable negotiation. If a dispute between the parties concerning the provisions of this Agreement cannot be resolved within thirty days, then the dispute is to be referred to Singapore for arbitration, Singapore laws will be applicable.

(Compl. at Ex. 1, ¶ 6.10).

Ordos and ARM also entered into an agreement whereby Ordos was obligated to pay ARM $1,250,000, and in exchange ARM would provide numerous services necessary to transport the Line 7 Equipment to Plaintiff Ordos' location in China. (Verified Compl. at ¶¶ 10-11; *see* Line 7 Transportation Agreement, attached to Compl. at Ex. 2). The Line 7 Transportation Agreement contains a clause that states:

> **Disputes Settlement.**   The disputes between the two parties will be resolved by

> amicable negotiation. If a dispute between the parties concerning the provisions of this Agreement cannot be resolved within thirty days, then the dispute is to be referred to Singapore for arbitration. Singapore laws will be applicable.

(Compl. at Ex. 2, ¶ 5.10).

**2)     The "Line 15 Equipment"**

In approximately August of 2011, Plaintiff Inner Mongolia purchased another piece of "massive" automotive manufacturing equipment that the parties refer to as the "Line 15 Equipment." (Verified Compl. at ¶ 13). Inner Mongolia and ARM entered into a Rigging Agreement, which was similar to the Rigging Agreement between Ordos and ARM, pursuant to which Inner Mongolia agreed to pay $760,000 to ARM in exchange for ARM's "rigging, dismantling, washing, packing, and loading of the Line 15 Equipment." (Verified Compl. at ¶ 15; *see* Line 15 Rigging Agreement, attached to Compl. at Ex. 4). The Line 15 Rigging Agreement contains a clause that states:

> **Disputes Settlement.** The disputes between the two parties will be solved by amicable negotiation. If a dispute between the parties concerning the provisions of this Agreement cannot be resolved within thirty days, then the dispute is to be referred to any court of competent jurisdiction in Ohio or the Beijing 1st Intermediate People's Court.

(Compl. at Ex. 4, ¶ 7.9).

Inner Mongolia and ARM also entered into a transportation agreement, which obligated ARM to "handle all services and pay all expenses" associated with transporting the Line 15 Equipment from Ohio to the Plaintiff's location in China. (Verified Compl. at ¶ 17; *see* Line 15 Transportation Agreement, attached to Compl. at Ex. 5). Inner Mongolia was obligated to pay ARM $1,050,000 under the Line 15 Transportation Agreement. (Verified Compl. at ¶ 19). The Line 15 Transportation Agreement contains a clause that states:

> **Disputes Settlement.** The disputes between the two parties will be resolved by amicable negotiation. If a dispute between the parties concerning the provisions of

> this Agreement cannot be resolved within thirty days, then the dispute is to be referred to Singapore for arbitration. Singapore laws will be applicable.

(Compl. at Ex. 5, ¶ 5.10).

### 3)     The Amended Transportation Agreement

Plaintiffs allege that, "[b]y March 2013, ARM still had not completed most of the Line 7 Transportation Services or the Line 15 Transportation Services." (Verified Compl. at ¶ 21). As a result, the parties entered into an Amended Transportation Agreement ("Amendment"), whereby Plaintiffs agreed to pay "an additional $700,000 in order for ARM to complete the Line 7 Transportation Services and the Line 15 Transportation Services." (Verified Compl. at ¶ 23, *see* Amended Transportation Agreement, attached to Compl. at Ex. 6). The Amended Transportation Agreement states, in pertinent part:

> 1. This Amended Agreement amends the Line 7 Transportation Agreement fully executed by the Parties on June 7, 2011 and the Line 15 Transportation Agreement fully executed by the Parties on November 3, 2011 (collectively, the "Transportation Agreements.")
>
>     . . .
>
> 3. In addition to the promises and obligations in the other paragraphs of this Amended Agreement, the Parties agree to perform the following services and obligations
>
>     . . .
>
>     (j) The parties agree that this Amended Agreement will be governed by the laws of the United States and enforceable by either party for equitable, injunctive relief in any U.S. District Court, in addition to actions for money damages in the same court.

Compl. at Ex. 6, pp. 1-2). The Amended Transportation Agreement is signed only by "Nancy," a representative of Ordos.

In May 2013, after the Amended Transportation Agreement was executed, President of ARM

Ronald W. Lech II signed and delivered a Statement to Plaintiffs, which states, in pertinent part:

> While addressing Line 7 & CTL and Line 15 Amendment, Inner Mongolia OED Engine co., Ltd commissioned Ordos city Hawtai Autobody Co., Ltd to sign the amendment with Absolute Rigging & Millwrights (ARM) for the Line 15 Amendment.
>
> ARM has no objection to the above arrangement, and agreed to that Ordos city Hawtai Autobody Co., Ltd as the main body to pay the Line 15 supplemental transportation costs which both sides have agreed in the Amendment . . . .

(Statement of Ronald Lech, attached to Pl. Resp. at Ex. D). ARM also attached Invoices to the Statement that notified Ordos that certain amounts were due under the Amended Transportation Agreement. (Pl. Resp. at Ex. D).

**4)      The Parties' Current Dispute**

Plaintiffs allege that they have paid to ARM all amounts owed under the Line 7 Rigging, Line 7 Transportation, and Line 15 Rigging Agreements, plus additional amounts under the Amendment and the Line 15 Transportation Agreement. (Verified Compl. at ¶ 29). Yet, Plaintiffs claim, Defendant has either failed to perform, has only partially performed, or has performed imperfectly under all the contracts. (Verified Compl. at ¶¶ 30-34).

Plaintiffs further allege that ARM is alleging an invalid "artisan's lien" for its millwright work on the Line 15 Equipment, even though Plaintiffs paid ARM all amounts due under the Line 15 Rigging Agreement. (Verified Compl. at ¶ 42).

Finally, Plaintiffs are facing problems related to Defendant's storage of the Line 15 Equipment. Plaintiffs maintain that ARM leased a piece of industrial property in Twinsburg, Ohio where it planned to store the Line 15 Equipment. (Verified Compl. at ¶ 39). Plaintiffs have been notified that ARM's lease on the Twinsburg property has expired, and that the owner of the Twinsburg property has "threatened to use self help or legal remedies to remove Hawtai's equipment

5

from its property." (Verified Compl. at ¶ 41). Plaintiffs aver that ARM has moved some of the Line 15 Equipment to other locations in Michigan, but that Plaintiffs have been unable to obtain possession of any of the Line 15 Equipment located in Ohio and Michigan. (Verified Compl. at ¶¶ 44-46).

## PROCEDURAL HISTORY

Plaintiffs filed their Verified Complaint on November 27, 2013. (Doc. #1). Plaintiffs allege six (6) counts against Defendant:

Count One:     Claim and Delivery

Count Two:     Conversion

Count Three:   Declaratory Relief

Count Four:    Breach of Contracts

Count Five:    Negligence

Count Six:     Unjust Enrichment

On December 24, 2013, Defendant filed its Motion to Dismiss, arguing, generally, that Plaintiffs' Verified Complaint should be dismissed because its claims are subject to the arbitration clause contained in the Line 15 Transportation Agreement. (Doc. #10). Plaintiffs timely responded (Doc. #13) and Defendant replied. (Doc. #14).

Thereafter, this Court ordered the parties to submit supplemental briefs on the issue of whether the Amended Transportation Agreement constitutes a valid amendment to the Line 15 and Line 7 Transportation Agreements, and whether the individual counts in the Verified Complaint fall within the scope of any of the parties' several arbitration agreements. (Doc. #17). Defendant filed its supplemental brief (Doc. #20). Plaintiff filed its own supplemental brief, pursuant to this Court's order, on March 20, 2014. (Doc. #23).

## STANDARD OF DECISION

Defendant has moved the Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss this action because it lacks subject matter jurisdiction due to the existence of an arbitration clause in the parties' contract. "A motion to dismiss based on an arbitration clause is more appropriately filed under Rule 12(b)(6), because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." *Dental Associates, P.C. v. Am. Dental Partners of Michigan, LLC*, 2011 WL 6122779 at *1 (E.D. Mich. Dec. 9, 2011) *aff'd,* 520 Fed. App'x 349 (6th Cir. 2013), *citing Moore v. Ferrellgas, Inc.,* 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008); *see also High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 795 (E.D. Mich. Dec. 17, 2008). Therefore, this Court will analyze Defendant's motion under Fed. R. Civ. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court may consider: 1) documents referenced in, or attached to, the complaint and central to the plaintiff's claims; 2) matters of which a court may properly take notice; and 3) public documents and records. *Costell v. Bank of New York Mellon,* 2013 WL 317746 (E.D. Mich. 2013); *Meyer v. Citimortgage, Inc.*, 2012 WL 411995 (E.D. Mich. 2012); *Devlin v. Kalm*, _Fed. App'x _, 2013 WL 4265757 (6th Cir. 2013).

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint need only contain "enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent

with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

Initially, the Court notes that this motion has been extensively, yet inadequately briefed by the parties. Plaintiffs' Verified Complaint contains six counts, one of which is a claim for "Breach of Contracts," wherein Plaintiffs allege that Defendant breached *all four* of the contracts existing between the parties. (Compl. at Count Four, ¶¶ 67-71). Three of those contracts provide that the parties will arbitrate all disputes in Singapore, but the Line 7 and Line 15 Transportation Agreements were purportedly amended and the arbitration clause removed. The Line 15 Rigging Agreement contains no arbitration clause at all.

Despite the fact that some contracts at issue contain arbitration clauses and some clearly do not, the parties' briefs proceed as though the only contract at issue in the Complaint is the Line 15 Transportation Agreement. (Compl. at Ex. 5; *see also* Def.'s Mo. at pp. 1-2: "Plaintiff's complaint generally arises out of one contract . . . the Line 15 Transportation Agreement . . . the Line 15 Transportation Agreement contains a mandatory arbitration clause."). Based only on the Line 15 Transportation Agreement's arbitration clause, Defendant asks this court to dismiss the entire action. (Def. Mo. at 5).

This Court ordered Defendant and Plaintiffs to submit supplemental briefs addressing each count of the Complaint individually, stating whether or not that claim was covered under the scope of any arbitration agreement, and whether or not this Court should dismiss the count, citing to

8

relevant legal authority. (Doc. #17). Defendant neglected to comply with this Court's order, instead submitting a supplemental brief that adopted the same position Defendant asserted in its opening motion: that the Line 15 Transportation Agreement is the only contract put at issue by Plaintiffs' Complaint.

Therefore, this Court will confine its consideration of Defendant's motion to the issue as it has been defined by the parties, i.e. whether this Court should enforce the arbitration agreement contained in the Line 15 Transportation Agreement.

**1) This Court Will Not Enforce The Line 15 Transportation Agreement's Arbitration Clause.**

Defendant argues that "the Court is without jurisdiction to take up this case because the Line 15 Transportation Agreement contains a mandatory arbitration clause." (Def. Mo. at 2, *citing* Line 15 Trans. Agreement, attached to Compl. at Ex. 5, ¶ 5.10). The arbitration clause contained in the original Line 15 Transportation Agreement provides that all disputes between the parties would be resolved through arbitration in Singapore. (Compl. Ex. 5 at ¶ 5.10).

An arbitration agreement is, quite simply, a contract. *See Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1962). Therefore, the Court will look to the parties' contracts to determine if an agreement to arbitrate exists.

Plaintiffs argue that the Line 15 and Line 7 Transportation Agreements were amended by execution of the Amended Transportation Agreement ("Amendment") (Compl. at Ex. 6), and that the arbitration clauses were explicitly eliminated from the Line 15 and Line 7 Transportation Agreements. The Amendment states that disputes will be governed by the laws of the United States and enforceable by either party in United States District Court. (Compl. at Ex. 6, ¶ 3(j)).

Defendant claims that "the Amendment could not have . . . ever served to modify the terms

9

of the original [Line 15] Transportation Agreement because it was not signed by both parties to the original [Line 15] Transportation Agreement." (Def. Reply at 1). Here, Defendant highlights the fact that the Line 15 Transportation Agreement states that it "is made by and between Absolute Rigging and Millwrights . . . and Inner Mongolia OED Engine Co., Ltd.," (Compl. at Ex. 5), whereas the Amendment states that it is "made by and between Ordos City Hawtai Autobody Co., Ltd. . . . and Absolute Rigging & Millwrights." (Compl. at Ex. 6).

Plaintiffs have a sound explanation for this anomaly. Plaintiffs explain that they designated a representative of Ordos City to sign and execute the Amendment on behalf of Inner Mongolia, and that this arrangement was agreeable to all involved.

Defendant admits that this arrangement existed, and was agreeable to all parties. After the Amendment was executed, ARM's president, Ronald Lech, was asked to provide a Statement acknowledging that Ordos City signed and executed the Amendment for itself, as well as on behalf of Inner Mongolia. (Pl. Resp. at 6). Mr. Lech provided Plaintiffs with their requested documentation, in which he stated:

> While addressing Line 7 & CTL and Line 15 Amendment, Inner Mongolia OED Engine co., Ltd commissioned Ordos city Hawtai Autobody Co., Ltd to sign the amendment with Absolute Rigging & Millwrights (ARM) for the Line 15 Amendment.
>
> ARM has no objection to the above arrangement, and agreed to that Ordos city Hawtai Autobody Co., Ltd as the main body to pay the Line 15 supplemental transportation costs which both sides have agreed in the Amendment . . . .

(Statement from Ronald Lech to Plaintiffs, attached to Pl. Resp. at Ex. D). Thus, Plaintiffs maintain that ARM, through its President, "expressly ratified the execution of the [Amendment] by Hawtai, including by Ordos City on behalf of Inner Mongolia." (Pl. Resp. at 6; Pl. Resp. at Ex. D).

Additionally, Plaintiffs allege (and Defendant does not deny) that Defendant issued invoices

10

and accepted payments from Plaintiffs that were only due to Defendant under the Amendment. The Court finds that, in light of Defendant's own ratification and acknowledgment of the Amended Transportation Agreement as an effective amendment to both the Line 15 and Line 7 Transportation Agreements, Defendant's argument to the contrary is disingenuous and without merit.

Based on Defendant's statement and conduct, the Court finds that the parties amended the Line 15 Transportation Agreement, including the arbitration clause. Therefore, because the Amendment contains no arbitration clause, this Court shall DENY Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

**2)        Plaintiffs Have Stated A Claim For "Claim and Delivery" Under Michigan Law.**

Defendant argues, without citation to authority, that the Court should dismiss Count One of Plaintiffs' Verified Complaint (Claim and Delivery) because it is a claim for relief under Michigan law, but the Line 15 Transportation Agreement provides that disputes arising therefrom will be governed by Ohio and Chinese laws. (Def. Mo. at 5).

As previously discussed, this Court finds that the Line 15 Transportation Agreement was modified by the Amendment. The Amendment states that "the Amended Agreement will be governed by the laws of the United States . . . ." rather than Ohio and/or Chinese laws. (Verified Compl. at Ex. 6, ¶ 3(j)).

There is no "common law of contracts" or "common law of property" of the United States. Thus, the Amendment's choice of law provision does not instruct this Court as to which state's contract laws would govern the parties' contract disputes. Typically, in diversity cases, the Court applies the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Under *Erie*, this Court must apply Michigan law to the issues before it in this case. Defendant has

11

provided this Court with no other valid reason to do otherwise.

Thus, the Court shall DENY Defendant's Motion to Dismiss Count One of Plaintiffs' Complaint because the original Line 15 Transportation Agreement's choice of law provision was amended.

## CONCLUSION & ORDER

For the reasons set forth above, Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. #10) is DENIED.

**IT IS SO ORDERED.**

                                      S/Sean F. Cox
                                      Sean F. Cox
                                      United States District Judge

Dated: April 10, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 10, 2014, by electronic and/or ordinary mail.

                                      S/Jennifer McCoy
                                      Case Manager