UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ordos City Hawtai Autobody Company, Ltd.
and Inner Mongolia OED Engine Company,
Ltd.,

      Plaintiffs,

v.                                                                            Case No. 13-14909
                                                                              Honorable Sean F. Cox

Dimond Rigging Company, LLC d/b/a
Absolute Rigging & Millwrights,

      Defendant.
_____/

**OPINION AND ORDER**

This case involves, among other things, a property dispute.  Plaintiffs Ordos City Hawtai
Autobody ("Ordos") and Inner Mongolia OED Engine Company, Ltd. ("Inner Mongolia")
(collectively, "Plaintiffs"), allege that Defendant Dimond Rigging Company, LLC, d/b/a Absolute
Rigging & Millwrights ("ARM") is unlawfully retaining possession of Plaintiffs' automotive
manufacturing equipment.

This matter is before the Court on Plaintiffs' Motion for Immediate Possession And/Or
Preliminary Injunction.  The motion has been fully briefed by the parties, and the Court held an
Evidentiary Hearing on April 28, 2014, April 30, 2014, May 1, 2014, and May 9, 2014.  For the
reasons set forth below, the Court shall GRANT Plaintiffs' Verified Motion for Immediate
Possession and, in the alternative, GRANT Plaintiffs' Verified Motion for Preliminary Injunction.
(Doc. #3).

**BACKGROUND**

Plaintiffs Ordos and Inner Mongolia are wholly-owned subsidiaries of Hawtai Motor Group ("Hawtai"). (Joint Stip. Facts at ¶ 1). Hawtai, Ordos and Inner Mongolia are organized under the laws of China, and their principal places of business are in China. (*Id.*) Defendant ARM is a Michigan limited liability company located in Birmingham, Michigan. (Joint Stip. Facts at ¶ 2).

In 2011, Plaintiffs purchased two pieces of automotive manufacturing equipment from a closing Chrysler plant in Twinsburg, Ohio. Through the execution of several contracts, Plaintiffs hired ARM to perform rigging work on the equipment and to ship the equipment from Ohio to China.

Plaintiffs allege that Defendant failed to transport all of the equipment as required under the contracts, and demands possession of the remaining equipment so that they can arrange for its transportation to China. Defendant counters that it was only required to ship certain portions of the equipment, and claims an artisan's lien for unpaid rigging/millwright work performed on the equipment. Defendant has refused Plaintiffs' demand for possession of the equipment in reliance on its purported lien rights.

**Plaintiffs' Verified Complaint**

Plaintiffs filed their Verified Complaint on November 27, 2013. (Doc. #1). Plaintiffs allege six (6) counts against Defendant:

Count One:    Claim and Delivery

Count Two:    Conversion

Count Three:  Declaratory Relief

Count Four:   Breach of Contracts

2

Count Five:      Negligence

Count Six:       Unjust Enrichment

**Plaintiffs' Verified Motion for Immediate Possession/Preliminary Injunction**

On December 2, 2013, Plaintiffs filed a "Verified Motion for Immediate Possession Pending Final Judgment/For Temporary Restraining Order and Preliminary Injunction." (Doc. #3). The Court immediately scheduled a Status Conference for December 9, 2013, (Order of 12/2/13, Doc. #5), and issued an order requiring Defendant to refrain from damaging, destroying, concealing, disposing of, or impairing the value of the Line 15 Equipment until the Status Conference could be held. (Doc. #5).

The Court held the Status Conference as scheduled. During the conference, the parties were able to resolve Plaintiffs' Motion for Temporary Restraining Order. The Court subsequently entered a Stipulated Order that required Defendant to store "[a]ll Equipment . . . indoors with the exception of two pieces that are too large for indoor storage and may be maintained outside at the Hastings location but shall be protected with shrink wrap." (Doc. #9 at 2).

Plaintiffs' Motion for Immediate Possession/Preliminary Injunction is presently before the Court for consideration. Plaintiffs ask this Court to enter an Order "compelling Defendant to immediately relinquish physical possession of Plaintiffs' equipment . . . to allow Plaintiffs access to Defendant's property for the purpose of loading and removing their equipment and/or to deliver the property to a location to be determined . . . ." (Pls.' Mo. at 5). Plaintiffs claim that they are entitled to relief under both Federal Rule of Civil Procedure 64 and MCR 3.105 (Claim and Delivery) and Federal Rule of Civil Procedure 65 (Injunctions and Restraining Orders). Defendant filed a Response to Plaintiffs' motion, (Doc. #21), and Plaintiffs replied (Doc. #22).

3

**Evidentiary Hearing**

The Court held an Evidentiary Hearing concerning Plaintiffs' motion on April 28, 2014, which was continued on April 30, 2014, May 1, 2014, and May 9, 2014.  Plaintiffs called the following witnesses at the hearing: 1) Alan Hsueh - Assistant to the Chairman, Hawtai Motor Group; 2) Hongda Wu - General Counsel for Hawtai Motor Group; and 3) Michael Stout - President of D&S Machine Repair, Hastings, Michigan.

Plaintiffs offered, and this Court received, the following exhibits[1] into evidence: Ex. A) Line 15 Purchase Agreement; Ex. B) Line 15 Wire Transfer Payment Documentation; Ex. C) Line 15 Rigging Agreement; Ex. D) Line 15 Transportation Agreement; Ex. E) E-mails and corresponding attachments concerning Line 15 Equipment, pages 16-23, 24-31, 44-52, and 53-57 only; Ex. F) Amended Transportation Agreement; Ex. H) Stipulated Order dated 4/15/14 in *Twinsburg Ind. Prop v. Dimond Rigging Company*, Case No. 14-00340 (N.D. Ohio); Ex. I) Photographic Depictions of Components of Line 15 Equipment; Ex. J) Stipulated Order Dated 12/10/13 entered by this Court; Ex. K) Photographs taken March 27, 2014 of the Line 15 Equipment in Hastings, Michigan; Ex. L) Inspection Photographs Taken Pursuant To This Court's 4/2/14 Order; and Defense Ex. 9) Line 7 Transportation Agreement.

As its sole witness, Defendant called Ronald Lech II, President and Sole Member of ARM Defendant offered, and this Court received, several exhibits into evidence: Ex. 8) Line 15 Transportation Agreement; Ex. 11) Printout of Internet Webpage, http://en.hawtaimotor.com/show-1-1-1.html.; Exs. 28, 29, 30 and 31) Photographs of Line 15 Equipment Taken by Defendant on

---

[1] Plaintiffs' Proposed Exhibit G is purposefully omitted as it was not offered into evidence.

April 18, 2014.

Having considered the stipulated facts presented by the parties, observed the evidence and the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

**FINDINGS OF FACT**

1.    **Plaintiffs' Representative, Alan Hsueh, Arranges For Plaintiffs' Purchase Of The Line 7 And Line 15 Equipment.**

Alan Hsueh ("Hsueh") is currently the Assistant to the Chairman of Hawtai. Hsueh has a Master's Degree in Industrial Engineering from the University of Texas. He retired from General Motors in 2009 and began his employment with Hawtai in 2010.

In 2011, Hsueh was tasked with finding additional automotive manufacturing equipment for Hawtai to purchase. Hawtai sought to manufacture a new, large Sports Utility Vehicle ("SUV"). Hsueh eventually located suitable stamping equipment for sale at a former Chrysler plant in Twinsburg, Ohio.

In August 2011, Plaintiffs, through Hsueh, purchased two pieces of automotive manufacturing machinery that were located at the Twinsburg plant. One of the pieces of equipment is known as the "Line 7 equipment." The other piece of equipment, which is the equipment at issue in this case, is a "2002 Schuler Crossbar Line, including all automation in front & rear of press and underground scrap conveyor." (*See* Pls.' Ex. A, Line 15 Purchase Agreement). The parties refer to this second piece of equipment as the "Line 15 Equipment."

---

[2] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

2.      **Alan Hsueh Hires Defendant To Dismantle And Ship The Line 7 And Line 15 Equipment To China.**

In addition to finding equipment for purchase, Hsueh was tasked with arranging for the transportation of the equipment from the United States to Hawtai's location in China. To that end, Hsueh interviewed the representatives of several companies. Among those representatives was Ronald Lech ("Lech"), who represented ARM.

A)      **Contracts Pertaining To Line 7 Equipment**

In June of 2011, Plaintiff Ordos and Defendant ARM entered into two contracts regarding the Line 7 equipment: the Line 7 Rigging Agreement and the Line 7 Transportation Agreement. The Line 7 Transportation Agreement states that Ordos "desires to transport packaged machine components from the Chrysler Twinsburg stamping plant . . . to Tianjin, China." (*See* Def. Ex. 9, Line 7 Transportation Agreement, at p. 1). Ordos agreed to pay ARM $1,250,000 in exchange for "rail transportation, trucking, sea transportation and related services." (Def. Ex. 9 at p. 1). The parties agree that Defendant shipped all components of the Line 7 equipment to China.

B)      **Contracts Pertaining To Line 15 Equipment**

In August and September of 2011, Plaintiff Inner Mongolia and ARM entered into two contracts regarding the Line 15 equipment: the Line 15 Rigging Agreement and the Line 15 Transportation Agreement. The Line 15 Rigging Agreement states that Inner Mongolia agreed to pay $760,000 to ARM in exchange for ARM's "rigging, dismantling, washing, packing, and loading of the Line 15 Equipment." (Joint Stip. Facts at ¶ 4; *see* Pls.' Exhibit C, Line 15 Rigging Agreement). Inner Mongolia paid to ARM all amounts due under the Line 15 Rigging Agreement. (Joint Stip. Facts at ¶ 7).

6

The Line 15 Transportation Agreement obligated ARM to "handle all services and pay all expenses" associated with transporting the "packaged machine components" of the Line 15 Equipment, including "all automation in front & rear of press and underground scrap conveyor system (collectively, "Crossbar Line")" from Ohio to the Plaintiffs' location in China. (Joint Stip. Facts at ¶ ; *see* Line 15 Transportation Agreement, Pl.'s Ex. D). Like the Line 7 Transportation Agreement, the Line 15 Transportation Agreement required Defendant to ship all pieces and components of the Line 15 equipment to China. Plaintiff Inner Mongolia was obligated to pay ARM $1,050,000 under the Line 15 Transportation Agreement, (Pl.'s Ex. D), toward which it made a $300,000 payment at its execution.

ARM, through Lech, provided Plaintiffs with an Estimated Shipping Schedule at the time the Line 15 Transportation Agreement was executed. (Pl. Ex. D). This shipping schedule stated that ARM would be ready to ship the Line 15 equipment in January 2012.

**3.     ARM Demands More Money To Ship The Line 7 and Line 15 Equipment To China.**

By early 2013, ARM still had not shipped any of the Line 15 equipment to China. ARM claimed it needed more money to ship the Line 7 and Line 15 equipment, and Plaintiffs were anxious to receive the equipment in China. Therefore, in May 2013, the parties executed an Amended Transportation Agreement, under which Plaintiffs agreed to pay ARM an additional $700,000 to perform under the original transportation agreements. (Pl. Ex. F). In the summer of 2013, Pursuant to the Line 7 Transportation Agreement, ARM shipped the entirety of the Line 7 equipment to China.

**4.     ARM Ships Only A Portion Of The Line 15 Equipment To China.**

In August 2013, ARM shipped certain portions of the Line 15 equipment from Twinsburg, Ohio to the Destination Port in China. Other portions of the equipment, referred to as the "break

bulk" pieces, remained in Twinsburg, Ohio. After the first set of shipments containing portions of the Line 15 equipment departed for China, Ronald Lech notified Hsueh for the first time that Plaintiffs would have to pay additional amounts for ARM to ship the remaining "break bulk" items from the Line 15 equipment. Plaintiffs did not believe they were required to pay any additional amounts to ARM.

**5.     ARM Claims A Lien Interest In The Remaining Line 15 Equipment And Refuses To Return It To Plaintiffs' Possession.**

In September 2013 through November 2013, ARM performed additional millwright work on the remaining pieces of Line 15 equipment still located in Twinsburg, Ohio. (Joint Stip. Facts at ¶ 9). This additional millwright work was performed so that Defendant could remove some portions of the Line 15 equipment from the Twinsburg, Ohio site to Defendant's property in Hastings, Michigan. On November 19, 2013, however, Defendant sent an invoice to Plaintiffs in the amount of $226,850.00 for the millwright work it had performed. Plaintiffs have not made a payment toward this invoice and deny its validity. (Joint Stip. Facts at ¶ 15).

To date, Defendant has not shipped the remaining pieces of the Line 15 equipment to China. In fact, Defendant refuses to relinquish possession of the Line 15 equipment because it claims it has an artisan's lien on the equipment pursuant to the unpaid November 19, 2013 invoice it sent to Plaintiffs.

**6.     Plaintiffs Suffer Harms As A Result Of The Delay In Receiving The Line 15 Equipment.**

Through a Mandarin Chinese language interpreter, Hongda Wu, General In-House Corporation Counsel for Hawtai, testified as to the harms that Plaintiffs are experiencing as a result of their inability to gain possession of the Line 15 equipment in China.

A)      **Harms To Market Share**

In 2011, Plaintiffs purchased the additional automotive manufacturing equipment in order to increase their production—specifically, to produce a new, large SUV that is currently in demand in China. By the end of 2013, Defendant still had not shipped all of the Line 15 Equipment to China. Thus, Plaintiffs were unable to meet the demands of Chinese consumers because it was unable to produce the large SUV that consumers wanted to purchase. Chinese consumers who wanted to purchase a large SUV would have done so from a car manufacturer other than Plaintiffs, thus reducing Plaintiffs' market share or, at least, preventing their market share from growing.

B)      **Harms To Government Relations**

Plaintiffs worked with one of the local governments in Tianjen, China in preparing to expand their manufacturing operations. The local government provided Plaintiffs with use of a manufacturing plant, as well as other preferential policies, based on Plaintiffs' promise of a new manufacturing plant that would be established in the area. Plaintiffs have suffered harm to their reputation with the local government because it has been unable to fulfill its promises to increase production through implementation of the Line 15 equipment at the new manufacturing facility.

C)      **Harms To Employee Relations**

Plaintiffs hired forty-two (42) new employees that were to run the Line 15 equipment when it was received and re-assembled in China. Because it has been nearly three years since Plaintiffs purchased the Line 15 equipment, but Defendant still has not been completely shipped the equipment to China, Plaintiffs had to lay off the new employees.

Additionally, Plaintiffs were in the process of hiring approximately one hundred (100) sales people in anticipation of their increase in production. Without the Line 15 equipment—hence,

9

without increased production—Plaintiffs were forced to terminate the process of seeking out and hiring of new sales people. Hongda Wu testified that professional sales people and skilled workers are a scarce commodity in China, and that it is very difficult to find replacements for them once these individuals become employed with another organization.

**7.    The Condition Of Plaintiffs' Line 15 Equipment Is Deteriorating As It Sits On Defendant's Property In Hastings, Michigan.**

When it became clear that Defendant was not going to ship the remaining Line 15 equipment to China, Plaintiffs were concerned that the equipment would become rusted, damaged, or would otherwise deteriorate if left unprotected outdoors during the harsh Midwestern winter. Thus, on December 10, 2013, shortly after Plaintiffs filed their Complaint, the parties entered a Stipulated Order (Doc. #9) requiring Defendant to maintain all of the Line 15 equipment indoors, except for two pieces that were too large for indoor storage. The parties agreed that Defendant could store those oversized pieces outside, but was required to cover them with shrink wrap. (Doc. #9).

In March of 2013, Hsueh was concerned that Defendant had failed to comply with the protection of the Line 15 equipment by failing to cover the outdoor equipment as required by the December 10, 2013 Stipulated Order. At a status conference held on April 2, 2014, the parties entered another Stipulated Order allowing Plaintiffs to send up to three representatives to cover and photograph the equipment. (Doc. #27).

Plaintiffs hired Michael Stout ("Stout"), President of D&S Machine Repair in Hastings, Michigan ("D&S"), to inspect the Line 15 equipment on Defendant's property, pursuant to the Court's April 2, 2014 Order. Stout testified about the current condition of the portions of Line 15 equipment now located on Defendant's property in Hastings, Michigan.

10

D&S focuses its business on machine repair and refurbishing stamping presses. In 1991, Stout began working for D&S as a millwright worker and machine builder. In 2001, Stout was promoted to the position of Project Manager. In 2012, Stout became President of D&S.

Stout is familiar with the Schuler Crossbar Press, referred to here as the Line 15 Equipment, because his company has done work on this type of equipment in the past. Stout inspected portions of the Line 15 equipment that were stored outdoors. Stout testified that four pieces of the outdoor equipment were completely uncovered. (*See* April 4, 2014 Photographs, Pl. Ex. K). Those pieces, he stated, are damaged by rust, and pitting caused from rust. (*See* April 4, 2014 Photographs, Pl. Ex. L). The electrical components of the machinery are also uncovered, which makes them susceptible to moisture and light damage. It is difficult to tell, however, if these components are damaged until the machine is reassembled.

Stout testified that the machine can be refurbished to its original condition. Time is of the essence, however, because the rust will continue to penetrate the metal surfaces for as long as it is allowed to exist on those surfaces. Stout testified that the Line 15 machine cannot run in its current condition.

## CONCLUSIONS OF LAW

**1)   Plaintiffs' Motion for Immediate Possession Pursuant to FRCP 64 and MCR 3.105**

Plaintiffs claim that they are entitled to immediate possession of the remaining Line 15 Equipment under Federal Rule of Civil Procedure 64 and M.C.R. 3.105. Federal Rule of Civil Procedure 64, entitled "Seizing a Person or Property," provides:

> (a)   **Remedies Under State Law—In General**. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs

11

to the extent it applies.

(b)  **Specific Kinds of Remedies**. The remedies available under this rule include the following–however designated and regardless of whether state procedure requires an independent action:

- arrest;
- attachment;
- garnishment;
- replevin;
- sequestration; and
- other corresponding or equivalent remedies.

Fed. R. Civ. P. 64.

Michigan Court Rule 3.105, entitled "Claim and Delivery," sets forth one of Michigan's methods for seizing property pending final judgment.  It states, in pertinent part:

(A) Nature of Action; Replevin. Claim and delivery is a civil action to recover

(1) possession of goods or chattels which have been unlawfully taken or unlawfully detained, and

(2) damages sustained by the unlawful taking or unlawful detention.
A statutory reference to the action of replevin is to be construed as a reference to the action of claim and delivery.

(B) Rules Applicable. A claim and delivery action is governed by the rules applicable to other civil actions, except as provided in MCL 600.2920, and this rule.

. . .

(E) Possession Pending Final Judgment.

(1) Motion for Possession Pending Final Judgment. After the complaint is filed, the plaintiff may file a verified motion requesting possession pending final judgment. The motion must

(a) describe the property to be seized, and

(b) state sufficient facts to show that the property described will be damaged, destroyed, concealed, disposed of, or used so as to

12

> substantially impair its value, before final judgment unless the
> property is taken into custody by court order . . . .

M.C.R. 3.105.  The rule further elucidates the elements that the plaintiff must establish in order for the court to order possession:

> (E)(3)(b) At the hearing, each party may present proofs. To obtain possession before judgment, the plaintiff must establish
>
> > (i) that the plaintiff's right to possession is probably valid; and
> >
> > (ii) that the property will be damaged, destroyed, concealed, disposed of, or used so as to substantially impair its value, before trial.

M.C.R. 3.105(E)(3)(b).

Thus, the rule makes clear that, in order for the Court to grant Plaintiffs' motion for immediate possession under Michigan law, Plaintiffs must establish that their right to possess the remaining Line 15 equipment is probably valid, and that the property *will be* damaged, destroyed, etc. if the Court does not grant Plaintiffs possession pending trial. *See* M.C.R. 3.105(E)(3)(b) (emphasis added).

### A)      Plaintiffs' Right to Possession Of The Line 15 Equipment is Probably Valid.

It is undisputed that Plaintiffs are the sole owners of the Line 15 equipment at issue. Defendant refuses to relinquish possession of Plaintiffs' equipment based on its purported lien rights. Defendant is claiming an artisan's lien on the Line 15 Equipment in the amount of approximately $226,000 based on millwright work it performed on the equipment in October and November of 2013. Defendant opposes Plaintiffs' motion for immediate possession because Defendant's lien rights would be destroyed if it unconditionally relinquishes possession of the machinery. (Def. Resp. at 6-7, *citing In re Lott*, 196 B.R. 768, 775 (Bankr. W.D. Mich. 1996)); *see also Joy Oil Co. v. Fruehauf Trailer Co.*, 319 Mich. 277, 283 (1947).

13

The Court finds that Defendant has failed to establish that it has a valid lien on Plaintiffs' equipment. The burden of proving a lien rests on the one claiming the lien. *Joy Oil Co.*, 319 Mich. at 282. Defendant has come forth with no credible evidence to establish that the millwright work was done at Plaintiffs' request. Nor has it been established that Defendant's millwright work was not required of Defendant under the Line 15 Rigging Agreement. Therefore, because Plaintiffs are the sole owners of the Line 15 equipment with no encumbrances upon their ownership, their right to possess the Line 15 equipment is probably valid.

> **B)    The Line 15 Equipment Will Continue To Be Damaged In The Defendant's Possession**.

Plaintiffs argue that the Line 15 Equipment has suffered, and will continue to suffer, damage as it sits on Defendant's property in Hastings, Michigan. Plaintiffs argue that Defendant's failure to adequately protect the property, in violation of this Court's order, supports the conclusion that the equipment will only further deteriorate in Defendant's possession.

This Court agrees. Defendant is in clear violation of this Court's December 10, 2013 Order that required Defendant to cover with shrink wrap all outside pieces of equipment. As a result, the outdoor equipment has begun to suffer rusting and pitting, as well as potential electrical damage. Defendant has shown that it will be incapable of properly caring for the Line 15 equipment during the pendency of this litigation. Therefore, because Plaintiffs' right to possess the equipment is probably valid, and because the Line 15 equipment will be damaged in Defendant's care, the Court ORDERS that Plaintiffs' Verified Motion for Possession Pending Final Judgment (Doc. #3) is GRANTED. Plaintiffs are not required to post bond because Defendant's purported lien rights are

protected by Order of the United Stated District Court for the Northern District of Ohio.[3]  (*See* Pl. Ex. H).

**2)  Plaintiffs' Motion for Preliminary Injunction Under Federal Rule Of Civil Procedure 65**

In the alternative, Plaintiffs request that this Court enter an Order requiring Defendant to relinquish possession of Plaintiffs' machinery that is located in Hastings, Michigan.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . [a] party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted).

Federal Rule of Civil Procedure 65(b) requires this Court to balance and consider four factors in determining whether a preliminary injunction is proper: (1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).  These four factors are to be balanced; they are not prerequisites that must be met.  *Id.* at 1229.

---

[3] On April 15, 2014, Judge Sara Lioi in the United States District Court for the Northern District of Ohio entered a Stipulated Order granting Inner Mongolia "a right to immediate possession of the [Line 15 Equipment]" that is presently located in Twinsburg, Ohio.  (*See* Pl. Ex. H, Stipulated Order, *Twinsburg Ind. Prop, LLC v. Dimond Rigging Company, LLC, et al.,* Case No. 14-00340).  Pursuant to Judge Lioi's April 15, 2014 Order, Plaintiff Inner Mongolia was required to "obtain issuance of a Letter of Credit . . . with Dimond Rigging Company, LLC d/b/a Absolute Rigging & Millwrights . . . as beneficiary in the amount up to $226,850."  (Pl. Ex. H at p. 1).

### A)      Likelihood Of Success On The Merits

The Court shall focus on Plaintiffs' cause of action for Claim and Delivery when considering whether Plaintiffs have shown a likelihood of success on the merits.  Plaintiffs are only requesting Defendant to relinquish possession of property that Plaintiffs undisputedly own, and Plaintiffs are not seeking an order restricting Defendant's rights or abilities in any other way.  *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (finding that, for purposes of a preliminary injunction analysis, plaintiff need only show a likelihood of success on the merits of the issue most central to its claims, rather than all of its claims.).

To prevail on a claim and delivery action, Plaintiffs must prove that Defendant unlawfully took or detained goods or personal property, to which Plaintiffs have a right to possess.  *Med. Technologies, LLC v. Akron Med., Inc.*, 2011 WL 1899230 (E.D. Mich. May 19, 2011), *citing* Mich. Comp. Laws § 600.2920; Mich. Court Rule § 3.105(A).

The Court finds that Plaintiffs are likely to prevail on their Claim and Delivery cause of action.  (*See* Pl. Compl. at Count One).  Plaintiffs are the sole owners of the Line 15 equipment, and Defendant has come forth with no valid basis for it to retain possession of Plaintiffs' property.  Therefore, the Court finds that this factor weighs in favor of granting a preliminary injunction.

### B)      Threat Of Irreparable Injury

If the Court grants a preliminary injunction, the Court must find that Plaintiffs will likely suffer irreparable injury without the injunction.  *See Society of St. Vincent DePaul v. American Textile Recycling Svcs.*, 2014 WL 65230 (E.D. Mich. Jan. 8, 2014) (slip copy), *citing Metrobanc v. Fed. Home Loan Bank Bd.*, 666 F. Supp. 981, 984 (E.D. Mich. 1987) (citations omitted) (holding that "if Plaintiffs fail to make a showing of irreparable injury, the Court must end its inquiry and the

16

injunction must not issue . . .").

Further, "[t]he moving party must demonstrate a noncompensable injury, 'for which there is no legal measure of damages, or none that can be determined with a sufficient degree of certainty.'" *Id.*, *quoting Merrill Lynch, Pierce Fenner & Smith Inc. v. E.F. Hutton & Co., Inc.*, 403 F. Supp. 336, 343 (E.D. Mich. 1975). The movant must show that irreparable harm is likely, not merely possible. *H&H Ind., Inc. v. Miller*, 2013 WL 6858760 (S.D. Ohio Dec. 27, 2013) (slip copy) (citations omitted). "A plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

The Court finds that Plaintiffs will likely suffer irreparable injury if the Court declines to order Defendant's release of the Line 15 equipment. As discussed at length above, the Court finds that Plaintiffs have suffered harm to their reputation with their local Chinese government. Those harms are not compensable by money damages. Plaintiffs have also suffered damage to relations with their employees. Those harms are not easily compensable with money damages.

Moreover, Plaintiffs have likely suffered harm to their economic position in the Chinese auto market, as they have been prevented from producing the large SUV that is in high demand in China. While this sort of harm may be compensable with money damages, it would be difficult to quantify the amount of damage that was caused by the delay of the Line 15 equipment.

Thus, the Court finds it likely that Plaintiffs will suffer irreparable injury if the Court does not issue a preliminary injunction.

### C)   Balancing Of Potential Harms

The Court finds that Plaintiffs will suffer more harm without an injunction than the Defendant will suffer if the Court issues an injunction. Plaintiffs purchased the Line 15 equipment

17

so that it could increase its production capacity in China.  Plaintiffs have made plans and promises in reliance on the Line 15 equipment that have been put on hold due to Defendant's refusal to turn over the Line 15 equipment.

On the other hand, Defendant will suffer almost no harm if it is required to turn over the Line 15 equipment.  As the Court explained, Defendant's purported lien has not been adequately established.  Moreover, even if Defendant does have a valid lien on Plaintiffs' equipment, its value has already been protected by Order of another court.  Plaintiffs have established that the delay in receiving the equipment is causing them harm, whereas Defendant has no use for the equipment or reason to retain it.  Therefore, the Court finds that the balancing of the harms falls in favor of granting the injunction.

### D)      Public Interest Consideration

The Court finds that public interest considerations weigh in favor of granting an injunction. The public has an interest in ensuring that the right to possession of one's own property is enforceable.  Additionally, the public has an interest in property being put to productive use rather than sitting uselessly in a storage yard.  Both interests will be served by this Court's grant of a preliminary injunction.  Thus, the Court finds that this factor falls in favor of granting an injunction.

Because all of the factors weigh in favor of granting a preliminary injunction, the Court shall, in the alternative, GRANT Plaintiffs' Verified Motion for Preliminary Injunction.  (Doc. #3).

## CONCLUSION

For the reasons set forth above, the Court shall GRANT Plaintiffs' Verified Motion for Immediate Possession (Doc. #3).  In the alternative, the Court shall GRANT Plaintiffs' Verified Motion for Preliminary Injunction Pursuant to FRCP 65 (Doc. #3).

18

The Court ORDERS that, on a mutually agreeable date no later than sixty (60) days after the issuance of this Order, Defendant shall allow Plaintiffs to enter onto its property at Hastings, Michigan to remove all portions of the Line 15 Equipment that exist there. Defendant shall fully cooperate with the removal of these items. Plaintiffs are not required to post any bond.

Defendant's Motion for Directed Finding (Doc. #40) is DENIED.

**IT IS SO ORDERED.**

S/Sean F. Cox _____
Sean F. Cox
United States District Judge


Dated: June 6, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 6, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy _____
Case Manager